UNITED STATES of America, Appellee,

v.

Jerry Lee WRIGHT, Appellant.

UNITED STATES of America,
Appellant,

v.

Jerry Lee WRIGHT, Appellee.

Nos. 88–2806, 88–2859.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1990.

Decided May 11, 1990.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Robert L. Neighbors, Little Rock, Ark., for appellee.

Before McMILLIAN and MAGILL, Circuit Judges, and HANSON,[*] Senior District Judge.

MAGILL, Circuit Judge.

Jerry Lee Wright appeals his convictions for bank robbery and conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 2113(d), 371. At trial, the district court[1] overruled Wright's objection to the admission of testimony of six lay witnesses for the purpose of eliciting their opinion as to whether, based upon their familiarity with Wright, the person depicted in a bank surveillance photograph of the robbery was Wright. Wright argues that the district court abused its discretion in admitting this testimony because it was not helpful to the jury and lacked a sufficient foundation. Wright further argues that his sixth amendment right to confrontation was violated because of the practical limitations imposed upon his cross-examination of those witnesses. Because we find that the district court did not abuse its discretion and that Wright's sixth amendment rights were not violated, we affirm.

### I.

On February 25, 1988, four masked men robbed the One National Bank in North Little Rock, Arkansas. As one of the men reached the door to leave the bank, he partially removed his mask and exposed his face to the surveillance cameras. Wright was charged with bank robbery and conspiracy. At his trial, the government introduced, as Government's Exhibit 4, the photograph from the bank's surveillance camera which most clearly showed the robber's face. In the picture, the man's profile was visible. His head was pointing down and he had a mustache but no beard. At trial,

Wright had a slight beard, although he seldom, if ever, wore one previously.

The government called six witnesses to give opinion testimony that the robber depicted in the photograph was Wright. The six witnesses included: (1) Calvin Johnson, Wright's parole officer, who testified that he had known Wright for two years and had seen him intermittently (approximately once a month for a period of several months; a period when he did not see Wright; then a period when he started seeing him again); (2) Jay Campbell, a Pulaski County, Arkansas deputy sheriff, who testified that he had known Wright for two years and had seen him approximately four times during that time period; (3) Don Causey, a Pulaski County, Arkansas deputy sheriff, who testified that he had seen Wright twice a year for each of the past ten years; (4) Buddy York, a bail bondsman, who testified that he met Wright for the first time in 1983, did not see him again until 1987, and had seen him about five times since 1987; (5) Larry Dunnington, a Little Rock police officer, who testified that he had known Wright for thirteen years and had seen him approximately fifteen times; and (6) Lance King, a Little Rock police officer, who testified that he had known Wright for two to three years and had seen him approximately eight to ten times. Over Wright's objection, the district court allowed these witnesses to testify. The government, however, did not elicit any testimony about their connection to law enforcement. Although Wright's attorney cross-examined each of the witnesses, he similarly did not elicit any testimony that he became acquainted with the witnesses because of his prior involvement in the criminal process. Each witness identified Wright as the robber depicted in the photograph.

### II.

■ Wright first argues that the district court erred in admitting the testimony of

[*] THE HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Districts of Northern and Southern Iowa, sitting by designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

the six witnesses because their testimony was not helpful to the jury under Fed.R. Evid. 701.[2] We review the district court's decision for abuse of discretion. *See United States v. Farnsworth*, 729 F.2d 1158 (8th Cir.1984).

Wright's case is controlled by *Farnsworth*. In *Farnsworth*, we held that the district court did not abuse its discretion when it allowed two parole officers and a used car salesman to give opinion testimony that the robber in a bank photograph was Farnsworth. In admitting the testimony, the district court in *Farnsworth* noted that:

> the defendant had grown a full beard since the time of the robbery. In addition, the day of the robbery, he wore a scarf over his face. These factors made it difficult for the jury to make a positive identification from the photographs. Because the parole officers' frequent contacts with Farnsworth familiarized them with his appearance prior to the robbery, the district court considered their identification testimony helpful to the jury and admissible under Fed.R.Evid. 701 and 403.

*Id.* at 1160–61. In the case at bar, Wright had grown a slight beard since the time of the robbery. On the day of the robbery, he wore a mask over his face. He only partially removed his mask as he was leaving the bank building. The picture taken of him as he removed his mask was not a model of clarity. On the contrary, it showed only his profile with his head pointing down. Under these circumstances, we cannot say the district court abused its discretion in admitting the lay opinion testimony pursuant to Rule 701 in order to assist the jury.

■ Wright next argues that the district court erred in admitting the identification testimony because it lacked a proper foundation. Wright bases this argument on his belief that none of the six witnesses spent sufficient time with Wright to satisfy the threshold requirement of Rule 701 that the testimony be "rationally based on the perception of the witness." Although the six witnesses did not have as extensive contacts with Wright as the two parole officers had with Farnsworth, each witness had seen Wright numerous times over an extended period of time. Under these circumstances, we cannot say that the district court's conclusion that the witnesses' testimony was rationally based on their perception was an abuse of discretion. In any event, whether the witnesses' contacts with Wright were extensive enough to permit them to make a proper identification was a matter affecting sufficiency, not admissibility, and as such was a matter for the jury.

■ Finally, Wright argues that the introduction of the witnesses' testimony violated his sixth amendment right of confrontation. Wright's constitutional claim is based upon the fact that all of the witnesses were acquainted with him only by virtue of his previous involvement in the criminal justice system. As a result, Wright claims that he could not cross-examine them as to possible bias because of the possibility that his case might be harmed if the jury found out about his prior involvement in the criminal justice system. We find Wright's claim to be without merit.[3]

Wright argues that *Farnsworth* was overruled in part by *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In *Farnsworth*, the panel noted that "[a] violation of the confrontation clause does not occur unless the limitation on the cross-examination could reasonably be expected to have a substantial effect on the jury's decision." *Farnsworth*, 729 F.2d at 1162. Although the Supreme Court has rejected this outcome

---

**2.** Fed.R.Evid. 701 provides:
   If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

**3.** Wright urges us to adopt the rationale of the Sixth Circuit in *United States v. Calhoun*, 544 F.2d 291 (6th Cir.1976). In *Farnsworth*, a panel of this court for sound reasons rejected the rationale of *Calhoun*. *Farnsworth*, 729 F.2d at 1161. We need say nothing more about *Calhoun*.

determinative test, *see Van Arsdall*, 475 U.S. at 679–80, 106 S.Ct. at 1435–36, Wright is entitled to no relief.

*Van Arsdall* holds that a defendant is denied his sixth amendment right of confrontation when the trial court *prohibits* him from engaging in appropriate cross-examination. *Id.*, 106 S.Ct. at 1435 (emphasis added). While such a prohibition on cross-examination does state a sixth amendment violation, there was no such prohibition imposed on Wright in this case. Wright's decision not to cross-examine the six witnesses for bias was a tactical decision made by his attorney.[4] It was not a prohibition handed down by the court. As such, Wright does not state a sixth amendment violation. *See United States v. Hines*, 696 F.2d 722, 731 (10th Cir.1982) ("The Sixth Amendment right of confrontation does indeed include the right of the accused to cross-examine a witness against him. However, this right is not denied simply because the prosecution is permitted to examine a witness which the defense declines for tactical reasons to cross-examine") (citation omitted).

### III.

In its cross-appeal, the government argues that the district court erred in refusing to sentence Wright pursuant to the Sentencing Guidelines. On November 22, 1988, the district court sentenced Wright pursuant to a "two-track" approach. The district court imposed a sentence on a pre-Guidelines basis and refused to apply the Sentencing Guidelines,[5] holding them to be unconstitutional. Nevertheless, the district court simultaneously filed a Report of Statement of Reasons for Imposing Sentence and Determination of Alternate Sentence which set forth what the sentence would have been had the Guidelines been followed. As a result, Wright was actually sentenced to fifteen years imprisonment on the bank robbery count with a concurrent five year sentence on the conspiracy count. In its Determination of Alternate Sentence,

the district court found that Wright would have been sentenced to a term of 132 months imprisonment had he been sentenced under the Guidelines. *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), which upheld the constitutionality of the Guidelines based on delegation and separation-of-powers principles, subsequently superseded the district court's rejection of the Guidelines.

In *United States v. Brittman*, 872 F.2d 827 (8th Cir.), *cert.denied*, — U.S. —, 110 S.Ct. 184, 107 L.E.2d 140 (1989), we stated that:

> the District Court acted prudently in using this two-track procedure. As the Court observed, 'if the Guidelines and the Commission are held constitutional, only a new commitment order will have to be executed.' [citation omitted] It will not be necessary to have a second sentencing hearing. Nor, of course, will the two-track procedure be appropriate in the future.

*Id.* at 829. Because we believe the district court in this case also acted prudently in using the two-track procedure, we do not require a new sentencing hearing. *Id.* However, we vacate the sentence imposed on a pre-Guidelines basis and remand for resentencing consistent with the alternative sentence of 132 months set forth in the district court's November 22, 1988 order.

### IV.

In conclusion, we hold that the district court did not abuse its discretion when it allowed the government to elicit testimony from lay witnesses to assist the jury in identifying the robber in the surveillance photograph. We further hold that because Wright's decision not to cross-examine the six witnesses was merely a tactical decision by his attorney, there was no sixth amendment confrontation clause violation. Finally, we vacate Wright's sentence and remand with instructions to resentence him consistent with the alternative sentence of

---

4. During oral argument, counsel admitted that his decision not to cross-examine the six witnesses as to bias was "tactical."

5. Because the robbery occurred after November 1, 1987, the Sentencing Guidelines are applicable.

132 months as set forth in the district court's November 22, 1988 order.