**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Sidney ROBINSON, Defendant–Appellant.**

### No. 92CA1018.

Colorado Court of Appeals,
Div. II.

April 20, 1995.

Rehearing Denied June 22, 1995.

Certiorari Granted Jan. 8, 1996.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge METZGER.

Defendant, Sidney Robinson, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of aggravated robbery. We affirm.

In the early morning hours of August 31, 1991, a cashier at a gas station/convenience store in Grand Junction was robbed at knife-point. The evidence at trial disclosed the following facts concerning the robbery.

An Afro–American male, approximately 6 feet 3 inches tall and weighing 230 pounds, entered the store and asked the clerk for directions. The man was wearing a cap, plastic sunglasses with a missing lens over the left eye, a long-sleeved sweatshirt, jeans, and white shoes. He had white tape on his knuckles and fingertips and had cut patches from his hair and stuck them to his face to simulate facial hair.

As the clerk reached under the counter for a telephone book, the man grabbed him by his clothing, held a bone-handled knife close to his chest, and demanded money. The clerk opened the cash drawer; the man took out all the money and fled.

A video camera in the store recorded the robbery. Later that morning, during the investigation of the robbery, the videotape was taken to the police station and played for various officers to determine if they could identify the robber. A detective recognized the robber as defendant, whom he had previously investigated for another robbery.

A few days later, in the early morning hours, a police officer stopped the defendant while he was riding a bicycle near his home. She testified that she had stopped him because he appeared to be the person she had viewed on the videotape. She did not arrest him at that time, but asked him for information concerning his address. She noted that his size and weight were similar to that of the robber. She also took some photographs of him, in order to compare them to the videotape.

The following day the police obtained warrants to search the defendant's home and to arrest him. In the course of the search, the police discovered a knife with a bone handle, matching the description of the one that had been used in the robbery. They also obtained shoes and clothing similar to that worn by the robber, a pair of plastic eyeglass frames, and a roll of white tape.

Later that day, police arrested defendant and, after a full advisement of his rights, questioned him about the robbery. They showed the videotape to the defendant, and although he initially denied involvement, he later stated, "You got me," and confessed that he had committed the robbery.

Before trial, defense counsel filed a motion to exclude the testimony of the detective who had recognized defendant in the videotape. The trial court held two *in camera* hearings concerning this testimony.

Defense counsel argued that the detective should not be allowed to testify concerning the basis for his recognition of defendant, because that detective had arrested defendant for another alleged crime the previous year.

The trial court ruled that the detective would be able to testify on direct examination only that he recognized defendant. The court stated: "He's not permitted to state

that it was during the process of an arrest or even an investigation of another crime. At least on direct examination that seems to be relevant to me and I am limiting it that way. It takes care of the [CRE] 403 problem."

Defense counsel then argued that she would be precluded from an effective cross-examination of the detective concerning motive and bias, because the detective had "tried to prosecute [defendant] two times and has lost two cases...." The trial court responded: "You can go into all of those things if you want ... but ... that's a tactical decision you have to live with."

Finally, defense counsel argued that the detective's testimony would usurp the function of the jury because the videotape was scheduled to be admitted during the trial. Defense counsel argued that the jury, after viewing the video, could make the determination whether the person in the video was the defendant. Therefore, defense counsel asserted, the detective's testimony would be unnecessarily highlighted.

The trial court rejected this argument as well, ruling that the testimony was helpful under CRE 701.

At trial, the detective was permitted to testify that he recognized defendant as the person on the videotape. He testified that at some point before the date of the robbery, he had met the defendant "face-to-face." Defense counsel did not cross-examine the detective.

The conviction here at issue followed.

### I.

■ Defendant contends the trial court erred in admitting the detective's testimony because it was not helpful to the jury. We disagree.

CRE 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

■ A trial court has broad latitude in determining whether a lay witness is qualified to testify. Thus, only if there is an abuse of this discretion will the trial court's decision concerning the testimony be disturbed on review. *Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994).

While no Colorado case has addressed this issue directly, several federal courts have considered the admissibility of lay opinion testimony in cases involving bank robberies recorded on videotape. The overwhelming weight of authority holds that, generally, a lay witness may testify regarding the identity of a person depicted in a surveillance photograph "if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury." *United States v. Farnsworth,* 729 F.2d 1158, 1160 (8th Cir. 1984); *see also United States v. Pace,* 10 F.3d 1106 (5th Cir.1993); *United States v. Stormer,* 938 F.2d 759 (7th Cir.1991); *United States v. Allen,* 787 F.2d 933 (4th Cir.1986), *vacated on other grounds,* 479 U.S. 1077, 107 S.Ct. 1271, 94 L.Ed.2d 132 (1987); *United States v. Barrett,* 703 F.2d 1076 (9th Cir. 1983); *United States v. Borrelli,* 621 F.2d 1092 (10th Cir.1980), *cert. denied,* 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980).

Defendant argues that there is no evidence in the record that his appearance had changed between the time of the robbery and the time of trial. Therefore, he contends, there is no reason to conclude that the jury would be any less able to make a comparison than would the detective. We do not agree.

The surveillance videotape is less than clear. It shows, for the most part, only a profile view of the robber, and it distorts to some extent the viewer's perspective concerning the robber's height. In addition, the videotape is quite brief, and the opportunity to make a comparison is therefore limited.

CRE 701 requires only that a lay opinion be rationally based on the perception of the witness and that it be helpful to the jury. Here, the detective's testimony was rationally based on his knowledge of the defendant's appearance. In addition, since identity was

an issue in the case, the testimony was helpful to a clear understanding of a fact in issue.

Accordingly, because the detective's testimony here met the criteria of CRE 701, we see no abuse of discretion in admitting it.

## II.

■ Defendant asserts that the trial court's admission of the detective's testimony violated CRE 1002, often referred to as the "best evidence" or "original writing" rule. We disagree.

CRE 1002 provides:

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute of the State of Colorado or of the United States.

■ Because the defense did not object to the testimony on this basis during trial, a plain error standard of review applies. *People v. Larson,* 782 P.2d 840 (Colo.App.1989).

Here, the original videotape was offered and admitted into evidence. Thus, the originality requirement of CRE 1002 was satisfied.

The rule does not prevent further testimony regarding the contents of the videotape. And, since the detective's testimony was helpful to the jury, admission of the testimony was not improper.

## III.

Defendant finally contends that admission of the detective's testimony was error because it violated both CRE 403 and defendant's constitutional right to confrontation. We do not agree.

## A.

■ CRE 403 authorizes a trial court, in its discretion, to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ We agree with the statement in *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979), *cert. denied,* 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979), interpreting equivalent FRE 403:

Relevant evidence is inherently prejudicial; but it is only *unfair prejudice, substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. It is not designed to permit the court 'to even out' the weight of the evidence, to litigate a crime, or to make a contest where there is little or none. (emphasis in original)

Here, the testimony of the detective was brief, at best. He testified that, at some point before the date of the robbery, he had met defendant face-to-face. He pointed defendant out in the courtroom and stated that he had seen the video of the robbery within a week of its occurrence. He then said that, upon seeing the videotape for the first time, he had recognized the perpetrator of the robbery as defendant and had so informed the investigating detective.

In our view, this testimony is not so unfairly prejudicial as to mandate its exclusion. There is no question that it is relevant and that it would be helpful to the jury.

Accordingly, the trial court did not abuse its discretion in its application of CRE 403 and its decision to admit the detective's testimony.

## B.

■ Defendant argues, however, that his right to confrontation was violated by the admission of the detective's testimony. Relying on *United States v. Calhoun,* 544 F.2d

291 (6th Cir.1976), he argues that he could not effectively cross-examine the detective without bringing up otherwise prejudicial information concerning his past involvement with the police. We perceive no violation of defendant's right of confrontation.

In *Calhoun*, the court held that it was *per se* an abuse of discretion to allow a defendant's parole officer to identify him from photographs of a bank robbery. The court concluded that the main defect in admitting that testimony was the inability of defense counsel to cross-examine the witness without bringing out the fact that defendant was on parole.

This reasoning has been rejected in virtually every other case which has addressed the issue. As noted in *United States v. Allen, supra*, 787 F.2d at 937: "Limitation of cross-examination was thus the result of a tactical choice by defendants similar to those frequently faced at trial. Nothing in the Rules of Evidence or any other source is intended to relieve criminal defendants from difficult strategic decisions.... Defendants chose to limit cross-examination, and we see no reason to insulate them from the natural consequences of that choice." *See also United States v. Pace, supra; United States v. Stormer, supra; United States v. Wright*, 904 F.2d 403 (8th Cir.1990); *United States v. Farnsworth, supra.*

Moreover, in our view there is a significant difference between the facts in *United States v. Calhoun, supra*, and those here. In *Calhoun*, the witness was a parole officer, and cross-examination would necessarily disclose defendant's past criminal involvement.

In contrast, here, the witness was a police detective. The fact that a person has "met" a detective "at some point" carries no direct connotation of culpability.

■ In any event, in light of the overwhelming proof of defendant's guilt, any error in the admission of the detective's testimony is harmless beyond a reasonable doubt. The store clerk's identification testimony, the videotape, the physical evidence, and the defendant's confession all pointed inexorably to defendant's guilt. *See Bartley v. People*, 817 P.2d 1029 (Colo.1991).

Judgment affirmed.

JONES and KAPELKE, JJ., concur.