19CA0684 Peo v Erickson 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0684 El Paso County District Court No. 17CR3379 Honorable Deborah J. Grohs, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Michael Ray Erickson II, Defendant-Appellant. JUDGMENT AFFIRMED Division III Opinion by JUDGE LIPINSKY Furman and Brown, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Jillian J. Price, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Michael Ray Erickson II appeals his judgment of conviction for possession of a weapon by a previous offender (POWPO). We affirm. I. Background Facts ¶ 2 Officer Raymond Shepard of the Colorado Springs Police Department pulled Erickson over for driving an unregistered car. Alexandria Morris, a friend of Erickson’s, was seated in the passenger seat when the officer pulled the car over. ¶ 3 As Officer Shepard approached the car to speak to Erickson, the officer saw the “grip of [a] handgun . . . sticking up in plain view” from “between the driver’s seat and the center console.” The officer asked Erickson to step out of the car so that he could secure the gun. Erickson complied. Underneath the gun, Officer Shepard saw a clear pipe with white residue. ¶ 4 Erickson told Officer Shepard that the gun belonged to Morris’s boyfriend. While speaking with Officer Shepard, Erickson neither denied knowledge of the gun nor appeared surprised that the officer had found it. ¶ 5 Officer Shepard looked up Erickson’s name in the police database and discovered he had a previous felony conviction. The officer arrested Erickson for being a felon in possession of a firearm. 
2 ¶ 6 The prosecution charged Erickson with POWPO, possession of drug paraphernalia, driving under restraint, and several traffic infractions, but later dismissed all the charges except for the POWPO charge. Under section 18-12-108(1), C.R.S. 2020, a person commits the crime of POWPO “if the person knowingly possesses, uses, or carries upon his or her person a firearm . . . subsequent to the person’s conviction for a felony . . . .” ¶ 7 At trial, Morris testified that she and Erickson did not know there was a gun in the car until Officer Shepard pulled them over and they started to look for the car’s “paperwork.” She said that Erickson had loaned the car to her and her boyfriend, Andrew Godfre, for a couple of days to see if they would like to buy it. Morris testified that, after they decided not to buy the car, Erickson picked it up from Godfre’s house. Morris said that she and Erickson had been in the car for no more than thirty minutes before Officer Shepard pulled them over. She testified that, only after the officer pulled the car over did she discover that Godfre had left his gun in the car. ¶ 8 Godfre testified that the gun was his and that he had left it in the car. He said he kept his gun in the car for safety and that he 
3 stored it between the driver’s seat and the center console. He also said that he did not tell Morris or Erickson that he had left his gun in Erickson’s car. ¶ 9 Based on this evidence, defense counsel argued that Erickson did not know the gun was in the car and, thus, he did not “knowingly” possess it for purposes of the POWPO statute. ¶ 10 The jury found Erickson guilty of POWPO, and the trial court sentenced him to two years in prison. Erickson appeals. II. Discussion ¶ 11 Erickson contends that his judgment of conviction should be reversed for three reasons: (1) the trial court erred by overruling defense counsel’s objection to the prosecutor’s questions regarding criminal charges previously filed against Morris; (2) the prosecutor committed flagrant misconduct in his closing argument by telling the jury that he found it “hard to believe” Morris’s testimony; and (3) these alleged errors cumulatively deprived him of a fair trial. We are not persuaded. 
4 A. The Prosecution’s Impeachment of Morris 1. Additional Facts ¶ 12 On cross-examination, the prosecutor asked Morris about her prior felony conviction: PROSECUTOR: You were convicted in 17CR4198 of False Information to a Pawnbroker; is that right? MORRIS: Yes. PROSECUTOR: You pawned stolen items to a pawnbroker and claimed ownership of those items as well as being in possession of them for longer than you had; isn’t that true? DEFENSE COUNSEL: Objection, Your Honor; that’s not what the charge is, nor is that the conviction. PROSECUTOR: Do you remember what you pled guilty to? MORRIS: Yes. PROSECUTOR: What did you plead guilty to? MORRIS: False Information to a Pawnbroker. . . . . PROSECUTOR: Now, the reason why you were convicted of that is because you had stolen jewelry, and you falsely claimed ownership of it to a pawnbroker as well as being in possession of it for longer than you had; isn’t that right? MORRIS: Yes. 
5 ¶ 13 On re-direct, defense counsel asked Morris further questions about her conviction: DEFENSE COUNSEL: Just regarding your conviction, I want to have – give you an opportunity to clarify. You did not plead guilty nor were you convicted of possessing stolen property; is that right? MORRIS: Correct. DEFENSE COUNSEL: And you were not convicted nor did you plead guilty to stealing any property? MORRIS: Correct. DEFENSE COUNSEL: You were convicted of False Information to a Pawnbroker? MORRIS: Yes. DEFENSE COUNSEL: And can you explain what False Information to a Pawnbroker is? Do you recall – is it when you pawn an item, you have to fill out a slip? MORRIS: Yes. DEFENSE COUNSEL: And when you fill out a slip, they ask you a number of questions? MORRIS: Yes. DEFENSE COUNSEL: And if you – if you make a mistake, either intentionally or otherwise, on that slip, have you provided false information to a pawnbroker? MORRIS: Correct. 
6 DEFENSE COUNSEL: And that is a felony conviction? MORRIS: Correct. . . . . DEFENSE COUNSEL: In this situation there was an allegation that there was stolen property? MORRIS: Correct. DEFENSE COUNSEL: But you were charged with and pleaded to and convicted of providing false information regarding that property? MORRIS: Correct. ¶ 14 On recross-examination, the prosecutor asked Morris follow-up questions regarding her plea agreement and conviction: PROSECUTOR: So [in] that same case you were also charged with Theft; isn’t that true? MORRIS: No. PROSECUTOR: It’s not true? It’s not true that you had three counts, one of which was False Information to a Pawnbroker, one of which was Theft of Property [$]2,000 to $5,000 worth of value, and one of them was Theft of Property [$] 2,000 to $5,000 in value as a Conspiracy charge? MORRIS: The other two were dropped if I’m not mistaken. PROSECUTOR: As a part of your plea bargain, correct? 
7 ¶ 15 Defense counsel objected to this question, but the trial court overruled the objection, saying to defense counsel, “You asked her if she was in possession of stolen property, and . . . she just said that . . . [she] owned the property for nine months when she had only owned it for six months. So I think it’s fair game to clarify the facts of the situation.” The prosecutor continued: PROSECUTOR: When you pled guilty to False Information to a Pawnbroker, one of the stipulations of that plea agreement was that those charges would be dismissed as part of that plea agreement, correct? MORRIS: Correct. PROSECUTOR: They were not dismissed prior to you entering that plea; is that correct? MORRIS: Correct. 2. Standard of Review and Applicable Law ¶ 16 We review a trial court’s evidentiary rulings for an abuse of discretion. People v. Rath, 44 P.3d 1033, 1043 (Colo. 2002). A trial court abuses its discretion only if its “ruling was manifestly arbitrary, unreasonable, or unfair.” Id. ¶ 17 Under section 13-90-101, C.R.S. 2020, a witness may be impeached by proof of a prior felony conviction. People v. Huynh, 98 P.3d 907, 913 (Colo. App. 2004). The scope of questioning “is 
8 generally limited to the name, nature and date of the offense for which the witness was convicted.” Id. (quoting Robert J. Dieter, Colorado Criminal Practice and Procedure § 19.42, at 381 (1996)). Questions regarding the facts underlying the prior offense are improper “unless relevant for impeachment purposes.” Id. (quoting Dieter, § 19.42). In addition, a prosecutor “may not ask whether a prior felony conviction arose from a plea or a trial.” People v. Gomez, 211 P.3d 53, 57 (Colo. App. 2008), abrogated on other grounds by Moore v. People, 2014 CO 8, 318 P.3d 511. ¶ 18 But “[c]ourts may relax this limitation if a party ‘opens the door’ to otherwise inadmissible evidence.” People v. Clark, 214 P.3d 531, 539 (Colo. App. 2009), aff’d on other grounds, 232 P.3d 1287 (Colo. 2010). “The concept of ‘opening the door’ represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an incorrect or misleading impression.” Golob v. People, 180 P.3d 1006, 1012 (Colo. 2008). When a party “opens the door” to otherwise inadmissible evidence, opposing counsel “may then inquire into the previously barred matter.” Id. 
9 3. The Trial Court Did Not Err by Allowing the Prosecutor to Ask Morris About Her Previous Criminal Charges Because Defense Counsel Opened the Door to Such Questioning ¶ 19 Initially, we note that, although the prosecutor, during cross-
examination, first asked Morris about the charge to which she pleaded guilty, Erickson did not object to that question and does not argue on appeal that the court erred by allowing it. Rather, in his appeal, Erickson focuses exclusively on the prosecutor’s questions on recross-examination regarding the charges filed against Morris. ¶ 20 The trial court did not err by overruling defense counsel’s objection to the prosecutor’s questions on recross-examination because defense counsel opened the door to that questioning. As noted above, defense counsel had asked Morris about her plea agreement and whether her case had included allegations of stolen property. Defense counsel also asked Morris whether she had been “charged with and pleaded to and convicted of” providing false information to a pawnbroker. This questioning created the possible inference that Morris had been acquitted of a theft charge following a trial. The prosecutor’s questioning on recross-examination 
10 clarified for the jury that, although Morris had been charged with theft, a jury had not acquitted her of such an offense. ¶ 21 Thus, we hold that the prosecutor’s recross-examination properly did not exceed the scope of evidence to which defense counsel’s re-direct examination had opened the door. ¶ 22 Moreover, the prosecutor did not mention the dismissed charges in his closing argument. To the contrary, the prosecutor noted Morris’s felony conviction during closing argument for the sole purpose of attacking her credibility. See Clark, 214 P.3d at 540 (holding that, during closing argument, a lawyer may remind the jury of a witness’s prior convictions to impeach the witness’s credibility). ¶ 23 For these reasons, the trial court did not abuse its discretion by allowing the prosecutor to question Morris about her prior criminal charges and plea agreement. B. The Prosecutor’s Comment that He Found It Hard to Believe that Morris Was Unaware of the Gun 1. Additional Facts ¶ 24 During closing argument, defense counsel cited Morris’s and Godfre’s testimony that the gun belonged to Godfre to support the 
11 argument that Erickson did not know the gun was in the car and, thus, did not knowingly possess it. ¶ 25 In rebuttal, the prosecutor said: [Defense counsel] said that Miss Morris was not aware that the gun was in the car. They don’t see or find the gun until they start looking for paperwork. This is my car. This is a very large center console. I take -- I have a gun -- I’m not gonna take it out of here. It’s actually bolted in – it’s sitting right there with the top handle exposed. I get into said car and I buckle my seat belt. I find it hard to believe that anyone would have not realized that there is a gun there in that particular spot that’s exposed so that an officer can see it in that particular circumstance. Defense counsel did not object to this argument. 2. Standard of Review and Applicable Law ¶ 26 “We review prosecutorial statements to which no contemporaneous objection was made for plain error. Plain error occurs only when an error so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the jury’s verdict.” Domingo-Gomez v. People, 125 P.3d 1043, 1053 (Colo. 2005) (citation omitted). “Only prosecutorial misconduct which is ‘flagrantly, glaringly, or tremendously improper’ warrants reversal.” Id. (quoting People v. Avila, 944 P.2d 673, 676 (Colo. App. 
12 1997)). “Prosecutorial misconduct in closing argument rarely constitutes plain error.” People v. Strock, 252 P.3d 1148, 1152-53 (Colo. App. 2010). ¶ 27 We engage in a two-step analysis in reviewing a claim of prosecutorial misconduct. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we “must determine whether the prosecutor’s questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review.” Id. ¶ 28 Because closing argument is counsel’s opportunity “to point to different pieces of evidence and explain their significance within the case,” it “may properly include the facts in evidence and any reasonable inferences drawn therefrom.” Domingo-Gomez, 125 P.3d at 1048. “[A] prosecutor has wide latitude in the language and presentation style used to obtain justice.” Id. “[I]t is not proper,” however, “for a prosecutor to refer to facts not in evidence or to make statements reflecting his or her personal opinion or personal knowledge.” People v. Walters, 148 P.3d 331, 334 (Colo. App. 2006). 
13 ¶ 29 “Claims of improper argument must be evaluated in the context of the argument as a whole and in light of the evidence before the jury.” Strock, 252 P.3d at 1153. “Defense counsel’s failure to object is a factor that may be considered in examining the impact of a prosecutor’s argument and may ‘demonstrate defense counsel’s belief that the live argument, despite its appearance in a cold record, was not overly damaging.’” Id. (quoting People v. Rodriguez, 794 P.2d 965, 972 (Colo. 1990)). 3. The Prosecutor’s Comment, Even if Prosecutorial Misconduct, Does Not Warrant Reversal Under Plain Error Review ¶ 30 Erickson argues that the prosecutor’s statement that he “f[ou]nd it hard to believe that anyone would have not realized that there [was] a gun” in the car because it was “exposed so that an officer can see it in that particular circumstance” was an improper expression of his personal opinion regarding Morris’s credibility. ¶ 31 Even if we assume that the comment constituted prosecutorial misconduct, however, the misconduct was not “flagrantly, glaringly, or tremendously improper” such that reversal is warranted under the plain error standard. Domingo-Gomez, 125 P.3d at 1053 (quoting Avila, 944 P.2d at 676). 
14 ¶ 32 The allegedly improper comment constituted only one sentence within the prosecutor’s closing argument. See id. (“Comments that [are] ‘few in number, momentary in length, and [are] a very small part of a rather prosaic summation’ do not warrant reversal under the plain error standard.” (quoting People v. Mason, 643 P.2d 745, 753 (Colo. 1982))). Further, the trial court instructed the jury that it was “the sole judge[] of the credibility of each witness and the weight to be given the witness’s testimony.” “Absent a showing to the contrary, we must presume that the jury understood and followed the trial court’s instructions.” People v. Bass, 155 P.3d 547, 552 (Colo. App. 2006). ¶ 33 Finally, we consider the lack of an objection to the comment, which suggests that defense counsel did not believe at the time that it was overly damaging. See Strock, 252 P.3d at 1153. And, as noted above, misconduct in closing argument “rarely constitutes plain error.” Id. ¶ 34 Thus, we conclude that the prosecutor’s comment in rebuttal closing argument does not warrant reversal. 
15 C. Cumulative Error ¶ 35 Because we reject each of Erickson’s contentions of error, we similarly reject his argument that his convictions should be set aside based on cumulative error. People v. Rios, 2020 COA 2, ¶ 39, 463 P.3d 322, 330 (“Because there was no error, there can be no cumulative error.”). III. Conclusion ¶ 36 The judgment is affirmed. JUDGE FURMAN and JUDGE BROWN concur.